## WILLIAM H. RAINEY and others, Executors &c. *vs.* WILLIAM LAING and others.

A testator, by the third clause of his will, gave and bequeathed to his executors the sum of $20,000 *in trust* to invest the same and keep it invested, and from the income to pay to his brother and sister $500 each, during their respective lives, and to pay annually the residue of the income to the general synod of the Reformed Protestant Dutch Church, to be applied to the support and education of pious, indigent young men preparing for the ministry; and upon the decease of either his said sister or brother, to pay annually the whole residue of said income, after paying $500 annually to the survivor, to the said general synod, to be applied as before mentioned; and, upon the decease of the survivor, to pay said principal sum of $20,000 to the said general synod, to be applied as before stated. By the fifth clause, the testator gave the residue of his estate to the said general synod " to be applied to the support and education of pious, indigent young men preparing for the gospel · ministry in that church."

*Held,* 1. That so far as the fifth clause of the will was concerned, the law of trusts had no application; there being but one trust created by the will, · viz. the one mentioned in the third clause, upon which there was no question, and the only relevancy of which was, so far as it tended to confirm the view that the fifth clause did not, and was not intended to, create any trust.

2. That the third clause showed that the testator was well advised as to the proper language to be employed when the bequest was to be held in trust; and that the fact of his not using similar phraseology in the fifth clause, only went to show that the devise therein mentioned was not intended by him to be construed otherwise than, by its terms, he had expressed it.

3. That the purpose avowed, in the fifth clause was, in the highest and holiest sense, both religious and charitable; and the devise was absolute in its terms; no condition whatever being imposed.

4. That as the fee vested absolutely in the synod, there could be no doubt of the validity of this provision of the will.

5. That the question whether the property, with that which the synod already held, would exceed in amount the sum to which its charter restricted it, could not be tried in an action brought by the executors, for the construction of the will. That that question was not to be determined collaterally, but only in a direct proceeding by the State.

6. That the condition imposed in the act incorporating the synod being, not against its *taking,* but against taking *and* holding, the corporation could *take ;* but whether it could *hold,* was another question, not necessary or proper in this collateral way to be considered—a question purely of public policy, with which individuals had no concern, but in which the State, as the sovereign, was alone interested, and which it might either raise or waive, according to its pleasure.

APPEAL from a judgment entered at a special term. The action was brought by the plaintiffs as executors of James B. Laing, deceased, to obtain a construction of his last will and testament. The testator died at Kinderhook, New York, on the 25th day of October, 1868. The defendants and respondents William L. Laing, a brother, Catharine E. Heermance, a sister, and Alexander K. Laing, a nephew of the deceased, are his only heirs at law, or next of kin. The deceased, by the second clause of his will, gave and bequeathed his cabinet and collection of coins, minerals, shells, &c., to Rutgers College, New Jersey. The third, fourth and fifth clauses of the will were as follows:

"*Third.* I give and bequeath to the executors of this my last will and testament, hereinafter nominated and appointed, or the survivors, the sum of $20,000 in trust, and for the purposes following, that is to say, that they or the survivors invest the same in their own names in and upon real estate or any stocks, funds or other securities in the United States generally considered good and permanent, and that they keep the same so securely invested, and that from the income arising therefrom they pay $500 annually to my sister, Catharine E. Heermance, during the period of her natural life, and that they also therefrom pay $500 annually to my brother, William L. Laing, during the period of his natural life, and that they pay annually the residue of the said income to the general synod of the Reformed Protestant Dutch Church, to be applied to the support and education of pious, indigent young men preparing for the gospel ministry in said church, and that upon the decease of either my said sister, Catharine E. Heermance, or brother, William L. Laing, they pay annually the whole residue of said income, after paying the said $500 annually to the survivor, to the general synod of the Reformed Protestant Dutch Church, to be applied as above mentioned, and upon the decease of the survivor

of my said sister, Catharine E. Heermance, and brother, William L. Laing, I order and direct my executors to pay the said principal sum of $20,000 above bequeathed to them in trust to the said general synod of the Reformed Protestant Dutch Church, to be applied to the support and education of pious, indigent young men preparing for the gospel ministry in said church, the said $20,000 to be added to and form a part of the fund hereinafter mentioned in the devise and bequest hereinafter made of my residuary estate to the said general synod, and to be held, invested and applied for the purposes aforesaid as therein directed.

*Fourth.* I give and bequeath my gold watch to my friend, Henry H. Van Vleek, of the city of Hudson, in case he should survive me.

*Fifth.* I give and devise all the rest and residue and remainder of my estate, real and personal, of every name, nature and description whatsoever, to the general synod of the Reformed Protestant Dutch Church, to be applied to the support and education of pious, indigent young men preparing for the gospel ministry in that church, as follows: The said general synod to invest, or cause to be invested, the principal, and apply the income arising therefrom to that purpose.

It is also my will that no part of the said income arising from the estate so given as aforesaid to the said general synod, shall be applied to the support or education of any such young man until he shall have entered upon the regular course of studies in Rutgers College, in the State of New Jersey, when the said income may be so applied; and I also direct and it is my will that any sum not exceeding $500 may be applied annually from said income to or towards the support and education of each one of such young men to whose support and education any part of said income may be applied.

And it is also my will, and I direct that the $20,000

hereinbefore directed to be paid to the said general synod of the Reformed Protestant Dutch Church upon the decease of the survivor of my said sister, Catharine E. Heermance, and my brother, William L. Laing, when received by the said general synod, be invested as herein directed in regard to my residuary estate, and the income arising therefrom to be applied to the support and education of pious, indigent young men preparing for the gospel ministry in said church, upon the same terms and conditions in all respects as hereinbefore directed in regard to the devise and bequest of my residuary estate, my intention being that the said $20,000, when received by the said general synod, shall be added to the said residuary estate and form one fund, to be held and known as the "Laing fund," and only the income arising from said 'fund to be applied to the purposes above mentioned.

It is my request, in case any young man who shall have received aid from the aforesaid fund, shall at any time feel able to refund any of the moneys applied to his support and education from said fund, or any part thereof, that he will pay the same to the general synod, or so much as he may feel willing and able to pay back, the same to be added to the principal of the said fund, but this request is not to be considered as binding upon any one to do so."

The property left by the deceased consisted entirely of personal estate. The heirs at law and next of kin claimed that the bequests to the synod were void.

The action was tried before Justice BARNARD, at the New York special term, in March, 1870. He subsequently rendered his decision, finding the following facts :

1. That James B. Laing died at Kinderhook, in this State, on or about October 25, 1868, leaving a last will and testament which has been duly admitted to probate, and a copy of which is annexed to the complaint.

2. That he left about $50,000 in personal property, in addition to the cabinet of minerals and watch specifically

Rainey *v.* Laing.

bequeathed; that he left a brother and sister, William L. Laing and Catherine E. Heermance, and a nephew whose name is Alexander K. Laing, sole child of another brother who died before the testator, his only heirs at law, and next of kin, and they all reside in the State of New York.

3. That Rutgers College is a corporation, whose authority to take the bequest given to it by the testator, and the propriety of whose taking, is not questioned.

4. That the general synod of the Reformed Protestant Dutch Church, now known by the name of the Reformed Church in America, (and about the identity and certainty of which no question is raised,) was incorporated by chapter 110 of laws of 1819, (*Sess. Laws of* 1819, *p.* 129,) which among other things provides that the synod shall not take and hold real and personal property of the yearly value of over $10,000, (its capacity to take and hold being upon that proviso.)

5. That the only powers conferred upon the general synod by the constitution of the Reformed Protestant Dutch Church and of the Reformed Church in America, are the following, viz: Original cognizance of all matters relating to the theological school or seminary, the appointment of professors and their course of instruction; the appointment of superintendents of the said school and the regulation thereof; the power of regulating and maintaining a friendly correspondence with the highest judicatories or assemblies of other religious denominations; to constitute particular synods and to make any changes in the same; to exercise a general superintendence over the spiritual interests and spiritual concerns of the whole church, and an appellate supervising power over the acts, proceedings and decisions of the lower assemblies relating to christian discipline or the interests of religion, and the general welfare and government of the church. That by such constitution the general synod has nothing to do

with the pecuniary details of, or any pecuniary provision for the education of students preparing for the ministry of said church in any branch or department of such preparation, or the payment of their tuition or other expenses; or the holding, paying or dispensing of any fund or funds, or sums of money for their benefit, during such preparation, or at any other time, or for the benefit of any person or persons who have entered upon the regular course of studies at Rutgers, or at any other institution or place, or for the benefit of any person or persons whomsoever.

· 6. That the general synod of the Reformed Protestant Dutch Church, at the time of the death of the testator had, and the general synod of the Reformed Church in America now has, no legal connection with Rutgers College, or its officers or students.

7. That at the time of the death of the testator, Rutgers College and the Theological Seminary of the Reformed Protestant Dutch Church at New Brunswick were, and now are, entirely distinct and separate institutions.

8. That before the incorporation of the general synod of the Reformed Protestant Dutch Church, it was a mere voluntary association, and that before and at the time of such incorporation, the general synod held no fund or funds, or property of the character of the fund attempted to be created or provided, or formed in and by the third and fifth clauses of said last will and testament.

9. That at the date of the death of the testator, the synod held in perpetuity, and had permanently invested, property, real and personal, the annual value and income of which largely exceeded $10,000 per year.

10. That the entire estate left by the testator, is in the hands of the executors named in the will, who have instituted this suit to obtain the direction of the court in the premises, and the general synod comes in by its answer and asks this court to direct the executors to hand

over the residue in controversy. On the other hand, the above named next of kin claim it.

As matter of law, the said justice concluded that the provisions of the will were void, except those uncontroverted; and ordered judgment that the executors deliver the cabinet of minerals to Rutgers College, the watch to Mr. Van Vleek, and the balance of the estate to William L. Laing, Catherine E. Heermance and Alexander K. Laing, share and share alike; the executors, however, in the first instance to retain their commissions and expenses, and such costs and allowances as might be made in their favor, or as they might be directed to pay the other parties or attorneys in this suit.

And he further directed, in case the said executors and next of kin did not agree on a settlement of the estate, that a reference might be had thereafter on the footing of this decision; and that on receiving a final discharge and satisfaction from the next of kin, the executors should be forever discharged of and from all other or further liability, by reason of the estate so coming into their hands as executors of said will. And he directed the costs to be paid out of the estate, and the allowances therein specified.

From this judgment the defendants, the general synod of the Reformed Church, appealed.

*M. S. Bidwell* and *L. K. Miller*, for the plaintiffs and the general synod of the Reformed Church.

I. James B. Laing, the testator, had full capacity and right to bequeath his property in the manner mentioned in his will. He was of mature age. The absolute ownership was vested in him. He had not a parent, wife or children. The parties who oppose the bequest had no legal or meritorious claims upon him. (*Laws of* 1860, *ch.* 360, *p.* 607.)

II. There is no doubt about the testator's intentions. It is clear that it was his intention that the defendants Laing

and Heermance should not take this property. It is equally clear that he intended that the general synod should take it, for the charitable purposes mentioned in the will.

III. The general synod had full capacity and right to take this property under this bequest. 1. They are a corporation, and as such *ipso facto* are capable of taking such a bequest. "It is incident, at common law, to every corporation, to have a capacity to take land and chattels." (2 *Kent's Com.* 281, *and cases cited.* 1 *Kyd. on Corp.* 69. *Angell & Ames on Corp.* 65, 2d ed.) They have capacity to take property by bequest. (*Angell & Ames on Corp.* 111, 2d ed. *In the matter of Howe,* 1 *Paige,* 214.) They had capacity to take this property by bequest, independently of the express power given by the act of incorporation. (*Sherwood* v. *American Bible Society,* 1 *Keyes,* 561. *Downing* v. *Marshall,* 23 *N. Y.* 366.) 2. They had power to take this property for religious and charitable purposes. This power was given to them in express terms by the law of the State, which created them a corporation. The bequest in question was for a religious and charitable purpose. (*a.*) It is intended for the benefit of indigent young men; this is clearly a charitable purpose. It is intended to be in aid of education. This, also, is a charitable purpose. "No time was ever so barbarous as to abolish learning and knowledge; nor so uncharitable as to prohibit relieving the poor." (1 *Co. R.* 26. 11 *id.* 7, 71. *Wilmot's Opinions,* 25. *Shelf. on Mortm.* 68; 20 *Law Lib. N. S.*) (*b.*) The bequest was also intended for the education of young men for the ministry in the Reformed Protestant Dutch Church; this is a religious purpose. The preparation of men for such a ministry, by a liberal and careful education, conduces directly to the extension and influences of religion. It appears, therefore, that before and at the time when the will was made, and at the testator's death, there was a law of the State expressly authorizing

Rainey *v.* Laing.

the general synod to take this property by bequest, and to hold it for the purposes mentioned in the will. They were also expressly authorized by the same law, to "hold" such property, and to make by-laws and regulations relating to the "management and disposition" of the property so bequeathed to them. They had, therefore, by the law of this State, full power to hold, manage and dispose of the property in the manner mentioned in the will. 3. And, therefore, if a bequest to one or more natural persons in trust for religious and charitable uses and purposes be unauthorized by law and void, yet a bequest to the general synod, of money to be appropriated to such uses and purposes, is expressly authorized by law and is clearly valid. It might be made in the very terms of the act, namely, to the general synod, "to be appropriated to religious and charitable uses and purposes, with power to make regulations relative to its management;" and in such a case the synod might lawfully appropriate it to the very purpose and in the very manner mentioned in this will. If so, then this bequest to them, which specified this purpose and manner, must be valid; the general synod would have the legal capacity and right to take such a bequest. The legislature did not think it expedient or necessary to specify the religious and charitable uses and purposes to which the property bequeathed to it should be appropriated; they left it to the sound discretion of the synod to appropriate it to any religious and charitable uses and purposes, and only required that it should be appropriated to no other uses or purposes than such as were religious and charitable, reserving to themselves the right to repeal the act of incorporation if the power thus given should be abused, or any evil result from it. The power thus given by the legislature cannot be abrogated, abridged or qualified by the court. The court, therefore, cannot require the bequest to be more particular or specific than the law, which in this case, is the act of incorporation.

IV. This of itself is a complete answer to the objection that the bequest is void for vagueness or uncertainty in the description of the persons to be supported and educated. 1. Even if the act of incorporation had not expressly authorized a bequest for an indefinite religious and charitable use and purpose, this bequest would not have been void for uncertainty. When the trustee is named, and the purpose is charitable, the bequest is valid, although the testator gives it to the trustee to apply it to a charitable use in any manner he may see fit, or to select as objects of charity any persons he may choose. (*Rex* v. *Clifton upon Dunsmore*, 1 *Bur. Sett. Ca.* 697. *Horde* v. *Earl of Suffolk*, 2 *M. & K.* 59. *Shelf. on Mortm.* 524, 525, 529, [21 *Law Lib. N. S.*] *Hill on Trustees*, 80, 81. *Lewin on Trusts*, 542, [81 *Law Lib. N. S.*] *Townsend* v. *Canes*, 3 *Hare*, 257. 8 *Jurist*, 104.) 2. If the particular persons to be thus supported and educated had been named or designated, so that (in the language of the judge at special term) they could come into court and ask the enforcement of the trust, it would not have been a gift to a religious or charitable use; it would have been a mere ordinary private trust, like any other case between trustee and *cestui que trust.* (*Levy* v. *Levy*, 33 *N. Y.* 97. *Beekman* v. *Bonsor*, 23 *id.* 308.) In this bequest the beneficiaries are necessarily to be selected by the general synod, who are the persons to apply the income arising from the fund, to the support and education of pious indigent young men, and who are therefore to determine to what persons, answering that description, it is to be applied. (*Griffith* v. *Graham*, (1 *Hawks*, 130, 131.) In the case of *Inglis* v. *The Sailors' Snug Harbor*, (3 *Pet.* 99,) the beneficiaries were as uncertain as in this bequest, but the decree was held valid. As property to a vast amount in value has ever since been held undisturbed under that decision, and as it was made by the highest tribunal in the land, its authority must be held conclusive.

Rainey *v.* Laing.

V. Another objection to the bequest is, that it creates a perpetuity; but this is a mistake, it creates no perpetuity at all. The general synod are the sole owners of the property; no one else has any right to it, present or future, vested or contingent. On the death of the testator, this property vested absolutely in the general synod, and is not likely to be divested by any event or contingency whatsoever. The general synod is, therefore, the absolute owner of the property, and the ownership is not suspended at all by any limitation or condition whatever; and, therefore, the bequest is not contrary to law. (1 *R. S.* 773, § 1.) The direction that the property shall be appropriated forever to a particular object, or in a particular manner, is not a "limitation" or "condition." There is no forfeiture or gift. Even if the general synod does not comply with this direction, (*Newton* v. *Reid*, 4 *Sim.* 141; 2 *Madd. Ch. Pr.* 38;) and even if it constitutes a trust or imposes a duty which the general synod may be deemed to undertake by accepting the bequest, yet that will create no suspension of the ownership, although a court of equity, on an information filed by the attorney-general, may perhaps, in such a case, exercise a control over the synod. (*Owens* v. *Missionary Society*, 14 *N. Y.* 381, 404. *Griffith* v. *Graham*, 1 *Hawks*, 133, 134.) In general, when charitable trusts are created, the fund is intended to be, and is a permanent fund, a fund to be held for an indefinite period, and the income alone to be used, yet as the absolute ownership is not thereby "suspended by any condition or limitation whatever," such permanency is not unlawful. Accordingly it is settled, that the property in such cases is not inalienable. There is not "positive law restraining the alienation of estates given for charitable purposes; the trustees in whom such estates are vested may, at law, make an absolute disposition, but if it be improvident or injurious to the interests of the charity, the transaction will be set aside in a court of equity, as a breach of trust."

(*Shelf. on Mortm.* 686, [21 *Law Lib.*, *N. S.*] *Atty. General* v. *Hungerford*, 2 *Clark & Fin.* 357, 374. *S. C.*, 1 *Bli.*, *N. S.*, 457. *Atty. General* v. *Warren*, 2 *Swans.* 291, 302. *S. C.*, 1 *Wils. Ch. C.* 387. *Levy* v. *Levy*, 33 *N. Y.* 97, 117. *Griffin* v. *Graham*, 1 *Hawks*, 96, 130, 132.) But in truth the question is not open for argument. The case of *Williams* v. *Williams*, (4 *Seld.* 525,) is a conclusive adjudication on this precise point. In that case there were two bequests, one to the trustees of the Presbyterian church in Huntington and their successors, in trust for the support of a minister, the principal to be loaned, and the income alone to be used; the other was given to certain unincorporated trustees and their successors, for the education of the poor. Both of these bequests were held valid.· And although the case has been much criticised, and as the latter bequest has been disputed, yet, as in the first, which created a perpetuity as much as the bequest of the general synod, the decision has never been questioned, and has repeatedly been recognized and approved. (*Bascom* v. *Albertson*, 34 *N. Y.* 584–599. *Theo. Sem.* v. *Kellogg*, 16 *id.* 83. 23 *id.* 308, 309.) If any principle or rule of law has been established in our courts by authority, certainly this rule, that such a bequest creates no illegal perpetuity, is settled beyond dispute. The case of *Inglis* v. *The Sailors' Snug Harbor*, (3 *Pet.* 126,) is also an authoritative decision to the same effect. And in conformity with these views, Wright, J., in *Levy* v. *Levy*, (33 *N. Y.* 117,) uses the following language: "Nor do our statutes against perpetuities interfere. Our rule and statute against perpetuities only requires that the whole interest shall be vested, and not contingent. A vested gift to a charitable corporation is not within the rule."

VI. Another objection to the bequest was, that it does not appear that there will be any pious, indigent young men, &c. The same objection might have been made in the case of *Inglis* v. *The Sailors' Snug Harbor*, (3 *Pet.* 126,) and in *Amherst Academy* v. *Cowls*, (6 *Pick.* 427,) and in

Rainey *v.* Laing.

almost every other appropriation to a charitable purpose, and hardly deserves serious consideration. When it is ascertained that no beneficiaries can be found, it may be considered what the effect of such a marvelous and unprecedented lack of candidates for the charity will be. This objection will appear to be peculiarly uncalled for, when it is considered that an offer on the part of the synod, of the best evidence on the subject of which the nature of the case admitted, was rejected. It is said by the learned judge, that "the law has not fixed a certain definition of piety or indigence, and cannot entertain controversies upon such questions." The answer is, that this is a question of fact, not one of law, and the learned judge has in the very next sentence answered the objection, when he says that "the testator intended to commit the determination of these questions to the discretion of a trustee;" he adds that the trustee is incompetent to act; but that is shown to be an error.

VII. It is objected that the general synod, at the death of the testator, owned property of greater yearly value than $10,000, and therefore, that the bequest to them was void. To this objection there are several answers. 1. The property owned by the general synod did not exceed the specified amount. The proposition involves principles of law, as well as facts. (*a.*) The property should be estimated according to its value in coin, and not in any government or other notes. The legal tender act, (if it be constitutional,) applies only to the payment of debts. It declares that the notes issued by the government under that act shall be received in payment of debts, (with certain exceptions,) but it is not declared that these notes shall be a standard of value. It is not, and does not purport to be of any power or effect in any other case, or for any other purpose. Moreover, it has no application to debts or obligations incurred or imposed before the date of the act;

and, upon the same principle, it can have no application to the powers of the general synod under an act of the legislature of much earlier date. (*Hepburn* v. *Griswold*, *Am. Law Reg. for March*, 1870, *p*. 175, *and cases cited.*) Therefore, the property in this case is to be estimated, not according to the value of a fluctuating and depreciated paper money in circulation, whether issued by the government or by corporations, but by a standard of intrinsic and universal value. If the legal tender act were not in existence it would not be pretended that the property was to be estimated by any other standard than its value in coin. To insist that it should be determined according to its value in government bills is no more maintainable than it would have been in old times to claim that it should be estimated by its value in the old continental paper money. The legal tender act has no application to the matters involved in this case. (*b.*) The property held in Michigan and New Jersey, under special laws of those States, must be excluded from consideration. They are in the nature of distinct corporations. (*Ohio and Miss. R. R. Co.* v. *Wheeler,* 1 *Black*, 286, 297. *Racine and Miss. R. R. Co.* v. *Farmers' Loan and Trust Co.*, 49 *Ill.* 331, 348, 349.) That property is not held under the law of this State. It was not the intention of the Legislature of this State to prohibit the corporation they created from holding property in another State, whether it is deemed directly the same or a different corporation. In fact this property must be deemed to be of no pecuniary value to this corporation. There was no evidence that it was of any value; for all that appears, it may be a *damnosa hereditas,* a source of endless expense. (*c.*) The funds known as the Van Benchoten fund and the Knox fund should also be excluded from consideration, as neither of them belongs to the general synod, each of them being vested in certain trustees, not in the general synod. (*d.*) The funds for special objects, of which the general synod are only the custodians, should also be excluded

from consideration, as these funds are not the property of the general synod. (*Atty. General* v. *Munby*, 1 *Mer.* 327. *Shelford on Mortm.* 250. 2 *Pow. on Devises by Jarmin*, 17, [5 *Law Library, N. S.*] *Hill on Trustees*, 458, *last ed.*) (*e.*) The annual value is to be such a per centage of the gross value as may reasonably be expected, over and above all expenses, losses, &c., to produce *communibus annis*, the clear net sum of $10,000, after making allowances for loss of interest, &c., when waiting for investment. The court is sometimes called upon to determine the question when a fund is to be set apart to secure an annuity. And it has been decided in this court in the case of *Forest et al. ex'rs.* v. *Fanshaw*, that in such a case a fund should be set apart which at the rate of not more than four per cent per annum would produce the required annuity. In *Williamson* v. *Williamson*, (6 *Paige*, 298,) five per cent seems to have been fixed as a proper rule. According to these decisions, the general synod could hold property to the amount of $250,000, or at least $200,000 in gold, without exceeding the amount named in the act of incorporation. The evidence shows clearly that the property held by them was not so much. 2. The proviso with regard to the annual value of the property to be held by the general synod is merely directory. This is evident both on principle and authority. (*a.*) Non-compliance with it could do no wrong to any individual. It was not enacted, therefore, as a measure of justice between man and man, or for the protection of the rights or property of any individual. (*b.*) Non-compliance is not a crime—an act to be punished. (*c.*) It is not declared what consequences shall follow from non-compliance. (*Newton* v. *Reid*, 4 *Sim.* 141; 2 *Madd. Ch. Pr.* 138.) It is not declared that the conveyance or gift of property beyond the prescribed amount shall be void, *ipso facto*, or that the property shall escheat or be forfeited to the State or to any body, public or private, in such a case, or that any penalty shall be incurred for such

non-compliance. In a word, no consequences wnatever are denounced against a non-compliance. The proviso is, therefore, a mere direction, or, in the language of Sir Edward Cole, is only declaratory, in the same manner as when a charter restricted a corporation from aliening but in a certain form; it was held that this was an ordinance testifying the king's desire, but it was but a precept, and doth not bind in law. (*The case of Sutton's Hospital*, 10 *Co. R.* 30, *b.*) So the proviso in the charter of the general synod, although it may testify the desire of the legislature, does not bind in law. (*d.*) There are obvious reasons why the legislature might not choose to make it obligatory. One is the progressive and continual deterioration in the value of money, and the constant necessity for an increase of the amount to be allowed. $10,000 in 1870 is not by any means of as much value as the same sum was in 1819. (*The case of Mitford School*, 8 *Co. R.* 131, *a.* *Humbert* v. *Trinity Church*, 24 *Wend.* 629, 630.) (*e.*) Another reason is the consideration that, if the law had been obligatory, much embarrassment and difficulty might arise if the corporation, not owning the prescribed amount, should recover a donation of property, as for instance, a house and land, much exceeding the deficiency; in which case a very doubtful and difficult question would be presented as to the legal effect of such a donation. (*f.*) It is well known that if land increased in value beyond the prescribed amount, by good husbandry or other improvements, or any casual or unforeseen circumstance, the corporation could hold it; and no good reason can be given why any more evil would result from acquiring such an additional amount by charitable donations. (2 *Conk. on Ins.* 722. 2 *Kent's Com.* 283, *b.* *Humbert* v. *Trinity Church*, 24 *Wend.* 629, 630. *Bogardus* v. *Trinity Church*, 4 *Sandf. Ch.* 634, 738.) Besides, as the legislature reserved a right to make any alterations in the charter, or to repeal it altogether at any time, there was no necessity for making the proviso

obligatory; although it was proper to introduce it as a guide to the general synod, to direct them rather than to limit and confine them rigidly in the acquisition and disposition of property. (*Chester Glass Co.* v. *Dewey,* 16 *Mass.* 94, 102.) (*g.*) There could have been no fear that there would be any danger of great accumulation of property by donations for mere religious and charitable purposes. (*h.*) To construe a law as directory, is neither unreasonable nor uncommon. The principle was asserted in the case of *Sutton's Hospital,* (10 *Co. R.* 30, *b,*) already quoted, and has been often acted upon since. (*Rex* v. *Inhabitants of Birmingham,* 8 *B. & C.* 29, 35. *The King* v. *Inhabitants of St. Gregory,* 2 *Add. & El.* 99. *Foot* v. *Prowse,* 1 *Strange,* 625. *The Banks* v. *Poitiaux,* 3 *Rand.* 136, 142. *The People* v. *Supervisors of Ulster,* 34 *N. Y.* 268, 272. *Dawson* v. *The People,* 25 *id.* 399–406.) (*i.*) It is submitted that in no case has a conveyance or gift been held void on such a ground. This of itself tends strongly to prove that this proviso is merely directory. (*k.*) Another very strong argument to prove it to be merely directory is deducible from the marked difference between this law and the law forbidding a devise to an alien, (2 *R. S.,* § 4,) which is in these words: "Every devise of any interest in real property to a person who at the time of the death of the testator shall be an alien, shall be void. The interest so devised shall descend to the heirs of the testator; if there be no such heirs competent to take, it shall pass under his will to the residuary devisees if any there be to take such interest." Can it reasonably be believed that if the legislature intended a conveyance or gift to this corporation increasing this property beyond the prescribed amount should be void, they would not have declared it to be void, as well as declared who should in such case take the excess? (*l.*) Again, if a man should convey property by deed to the general synod, in excess of such prescribed

amount, would his deed be void? Could he, in the face
of his deed, recover the property from the corporation?
And if he could not, could his devisees or heirs, if it were
realty, or his legatees or next of kin, if it were personalty?
And why, if he bequeaths it, instead of conveying it while
living, can they recover it? Upon what rational ground
is the law any more binding in the one case than in the
other? (*See Chester Glass Co.* v. *Dewey,* 16 *Mass.* 94–102.)
3. If, however, the law be not deemed directory, it does
not necessarily follow that the bequest is void. Under a
liberal, or at least an equitable construction of the laws
of 1848 and 1860, respecting gifts to charitable associations,
&c., the bequest may be, and ought to be upheld. (*Laws
of* 1848, *ch.* 319, *p.* 448, § 6. *Laws of* 1860, *ch.* 360, *p.* 607.)
Under the last of these acts, if he had left a wife, child or
parent, the bequest would have been valid to the extent of
one half of the testator's estate; and it is implied that if
he left no wife, child or parent, it would be valid altogether.
Again, if the proviso be not merely directory, and if the
effect of it be not obviated by the law of 1848 or 1860,
still the bequest is not void. The general synod, by its
very incorporation, became *ipso facto* capable of taking, as
has been shown. (*a.*) The proviso does not prohibit the
general synod from taking the property in such a case;
but from thus taking and holding. The distinction between
a capacity to *take,* and one to take *and hold,* is well estab-
lished in law. In the case of mortmain, in England, the
property will pass to the corporation, but it cannot hold it.
It enures to the benefit of the lord or the crown. (2 *Kent's
Com.* 282, *n. Wilmot's Opinions,* 9. *Matter of Leefe,* 4 *Edw.
Ch.* 395.) So in the case of an alien; a conveyance to him
is not void; he has capacity to take, but he cannot hold
as against the people. (*The People* v. *Conklin,* 2 *Hill,* 67.
*Wadsworth* v. *Murray,* 16 *Barb.* 601. *S. C.,* 2 *Kern.* 376.)
(*b.*) And it is settled by express adjudication, that this dis-

tinction applies in this precise case. (*Leazure* v. *Hillegas*, 7 *S. & R.* 313, 320. *Baird* v. *Bank of Washington*, 11 *id.* 411, 418. *Runyan* v. *Lessee of Astor*, 14 *Pet.* 131.) 5. But if the law be imperative, and the general synod be incapable of holding the property, it does not belong to the next of kin. (*a.*) The people alone can take advantage of the incapacity of the general synod to hold it; and can do so only by regular proceedings, instituted for this very purpose. The question cannot be raised in any collateral proceedings. The proviso was intended, not for the benefit of the next of kin, but merely as a matter of public policy. The people may overlook and tolerate a noncompliance with it. The power to enforce it by any private citizen at his pleasure, has been wisely and justly withheld. This is the prerogative of the State. If the people by their constituted agents, do not see fit to enforce this provision of the law, no one else has a right to usurp this prerogative. (2 *Kent's Com.* 282, *d.* *Humbert* v. *Trinity Church*, 24 *Wend.* 630. *Bogardus* v. *Trinity Church*, 4 *Sandf. Ch.* 758, 759. *The Banks* v. *Poiteaux*, 3 *Rand.* 136, 146. *Irvine* v. *Lumberman's Bank*, 2 *W. & S.* 190, 205. *Baird* v. *The Bank of Washington*, 11 *S. & R.* 411, 418. *State of Indiana* v. *Woram*, 6 *Hill*, 33. *Trustees of Vernon* v. *Hills*, 6 *Cowen*, 23. *Canal Company* v. *R. R. Co.*, 4 *Gill & J.* 122. *Hamilton* v. *Annapolis*, &c., 1 *Md. Ch. Decis.* 107. *Comm.* v. *Union Ins. Co.*, 5 *Mass.* 230.) (*b.*) The right of the people alone, in such a case, to take the property, accords with, and seems necessarily to result from the common law rule, that on a dissolution of a corporation, the chattels belong to the people. (2 *Kent's Com.* 307. *Fox* v. *Horah*, 1 *Iredell's Eq.* 358, 361. *Ang. & Ames on Corp.* 667, 2*d ed.*)

VI. The various exceptions of the general synod to the rulings and decision of the judge at special term, were well taken; and the judgment should be reversed.

*Tobey & Silvester*, for the respondents Wm. L. Laing and Catharine E. Heermance.

I. The general synod, at the time of the execution of the will of James B. Laing, and at the time of his death, held property the income or yearly value of which exceeded $10,000, the amount to which it is limited by the act of its incorporation, and was incapable of taking any additional property. It had exhausted its legal capacity to take or acquire title to property in any form or for any purpose, and consequently cannot take the property bequeathed to it by the testator. 1. There can be no question that the yearly value of the property which it then held exceeded $10,000; at the lowest estimate, it was $14,229. The distinction attempted to be established between the various funds held by the synod, by the witness Peter R. Warner, cannot affect the question. The legislature has recognized no such distinction between funds that the synod might claim to hold as trustee or otherwise, and the court can create no such distinction. It has declared that the yearly value of all its property, however held, shall not exceed $10,000. Even this witness testified that " the principal is all held by the synod," and that is sufficient to exclude it from taking additional property. The act limits its taking and holding real and personal estate, by the proviso above mentioned, in any capacity or function, or for any purpose or object. It is sufficient that it holds the property, to make the proviso applicable. 2d. The synod cannot therefore take this bequest. Its relation to it is the same as if the synod had never been empowered to acquire, take or hold any property whatever—as if there were no such body in existence, and therefore no legatee. It has no authority to take, except what the statute confers, and that has been already exhausted. This is a question entirely different from that presented where a corporation restricted as to amount or value in the acquisition or holding of property has possessions

which have increased in value beyond the prescribed limits, or when without opposition it has received property while laboring under the disability, and the heirs or next of kin seek its recovery. Here the corporation has never had the property in possession, and its right to take or hold is contested at the outset, and the objection is fatal. Any other rule would enable this organization to take and hold property to any extent, and render nugatory the legislative restriction. (*White* v. *Howard*, 52 *Barb.* 294, 311, 314:)

II. No competent trustee is named in the will or appointed by the testator, in whom the legal estate in the trust fund designated by him as the Laing fund can vest, and the bequest is therefore void. 1. The trustee named is the general synod of the Reformed Protestant Dutch Church. Its powers are conferred and must be measured by the act of its incorporation. It can exercise no others. It is an artificial body deriving its legal existence from the statute. It is entirely a creation of the statute, and can only take such property as it is expressly authorized by the statute to take. A corporation created by the legislature has no powers other than those expressly granted it, and such as are necessary to carry into effect those that are expressly granted. (*The People* v. *Utica Ins. Co.*, 15 *John.* 358, 383. *N. Y. Firemen's Ins. Co.* v. *Ely*, 2 *Cowen*, 678, 709. *Same* v. *Sturges*, *Id.* 664, 675. *Boyce* v. *City of St. Louis*, 29 *Barb.* 650, 656. *Halstead* v. *Mayor of N. Y.*, 3 *Comst.* 430, 433. *R. S.* § 3, *tit.* 3, *part* 1, *art.* 3, *ch.* 18.) 2. This incompetency is not removed, or in any manner affected, by the provisions of the Revised Statutes, with respect to corporations. Section 1, subdivision 4 of title 3, part 1, article 3, chapter 18, of the Revised Statutes declares that, "Every corporation, as such, has power to hold, purchase and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter." It is not

necessary for the purposes of the general synod, that it shall receive the property bequeathed to it, in the will under consideration, as a trustee. Those purposes do not require that pious, indigent young men preparing for the gospel ministry in the Dutch church, shall be educated at Rutgers College, from the income of the fund which is attempted to be created by the will. What is the general synod? Simply an ecclesiastical body, or, more properly, assembly. Not a scientific, literary, benevolent, charitable, or missionary society. It is not even an organization, in the general acceptation of the term. Its functions, duties, powers and purposes are defined and specified by the constitution of the church. By that constitution the ecclesiastical assemblies of the church are divided into three, consistorial, classical and synodical, and the synodical are divided into two, the particular and general synods. The general synod is a delegated body composed of three ministers and three elders from every classis. It is the final court of appeal in judicial cases, has the control of the theological seminary, and appoints the theological professors, is the channel of correspondence with other churches and exercises a general superintendence over the spiritual interests and concerns of the whole church. For none of these purposes is this fund, and the disposition of it in the manner directed by the will, necessary. The persons for whose benefit the fund is to be dispensed are not those who have entered upon the regular theological course in the seminary, but those who have entered upon the regular course of studies in Rutgers College, a general literary institution, who may leave the college after they have completed that course or may fail to pass the examination necessary, to enable them to be received as students in the seminary, and thus the ministry of the church not receive any accession to its numbers by reason of this fund. 3. The courts, in deciding when bequests and devises to corporations have been for their purposes, have given a construction to

Rainey *v.* Laing.

the statute ; and that construction shows that this bequest is not within the purposes of the general synod. (*Theological Seminary of Auburn* v. *Cole*, 18 *Barb.* 378, 385. *The Same* v. *Kellogg*, 16 *N. Y.* 89. *Wilson* v. *Lynt*, 30 *Barb.* 132. *King* v. *Rundle*, 15 *id.* 146. *Levy* v. *Levy*, 33 *N. Y.* 123, 124.) 4. In the acts which have been passed for the incorporation of charitable and other societies the legislature has exhibited an intention to confine every corporation within strict limits; and it is proper. to consider those acts in connection with the charter of the synod, as throwing light upon the construction proper to give to it, and as indicating that a strict construction is to be applied to the word " purposes." (*Laws of* 1840, *ch.* 318. *Laws of* 1848, *ch.* 319.) 5. The article of the Revised Statutes with respect to corporations, not only declares that every corporation has certain powers, but in the third section expressly provides that in addition to the powers enumerated in the first section, and to those expressly given in its charter, or in the act under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers except such as shall be necessary to the exercise of the powers so enumerated and given. To take this bequest and dispose of it according to the provisions of the will, requires the exercise of a corporate power, viz., that the property shall be held in perpetuity by the synod ; and the third section, above referred to, expressly prohibits this, as it is not within the power conferred by the first section, and is not given by the act of incorporation. It is not authorized by the statute to hold property for the benefit of others. The legislature has incorporated it ; but it possesses the privileges of a corporation only while it acts within its corporate powers ; when it exceeds them it loses any privilege and prerogatives that it may have as a corporation, and is invested with no greater rights than any natural person. 6. The general synod is not competent, therefore, to take this bequest, either under

its charter or the provisions of the Revised Statutes. Consequently no competent trustee has been appointed, and this is fatal to the validity of the bequest. (*Wilson* v. *Lynt*, 30 *Barb*. 132. *Voorhees* v. *Presbyterian Church*, 17 *id.* 106. *Owens* v. *Missionary · Society of M. E. Church*, 14 *N. Y.* 406. *Beekman* v. *Bonsor*, 23 *id.* 306, 310. *Phelp's Executor* v. *Pond, Id.* 77. *Sherwood* v. *American Bible Society*, 1 *Keyes*, 561. *Downing* v. *Marshall*, 23 *N. Y.* 382.) 7. The rule that equity will not let a trust fail for want of a trustee, is not applicable to this case. (*a.*) It applies to cases of vacancy occurring, not to an original deficiency. (*Owens* v. *Missionary Society*, 14 *N. Y.* 381. *Phelps* v. *Pond*, 23 *id.* 77. *Beekman* v. *Bonsor, Id.* 298.) (*b.*) It applies only to trusts in all other respects valid, and cannot be applied to cure an original defect. It does not apply when there is both a failure to appoint any trustee or to appoint a competent trustee, and when the beneficiaries are indefinite. (1 *Jarman on Wills*, 218. *Hill on Trustees*, 176, 190. *Boyle on Charities*, 237. *Ayres* v. *M. E. Church*, 3 *Sandf.* 366. *Sherwood* v *American Bible Society*, 1 *Keyes*, 561. *Story's Equity Jur.* § 1146.)

III. The act of incorporation, or the Revised Statutes, conferring no power upon the synod to take and hold the fund attempted to be created · in the will, an authority to do so cannot be established by proof that previous to its incorportion it held certain funds and used the income for certain purposes; even if among those purposes was the education of young men for the ministry. The powers given by the charter and the Revised Statutes cannot be thus enlarged. The fact that as individuals the members of the general synod, or the general synod which was then purely a voluntary association, may have done certain acts, clearly cannot confer the right to do the same acts as a corporation, after they have become incorporated, when their charter does not specify the doing of those acts as among the powers granted. They become

by their incorporation a different organization, as different as two distinct persons; their identity is changed. Their existence is only such an existence as their charter gives, and independently of the purposes for which that charter creates them they have no legal life, and of course, if not in existence, can exercise no power whatever.

IV. As a matter of fact, there is no evidence in the case that any of the funds held by the synod previous to its incorporation partook in any degree of the character of the fund attempted to be created in the will under consideration, or had any of its distinctive features.

V. The beneficiaries named in the will are uncertain, unascertainable and undefined; and the bequest is therefore void. 1st. The word *pious* is a very indefinite term. The Romanist, the Baptist, the Moravian, the Lutheran, the Unitarian, the Universalist, the Dutch Reformed, the Methodist, the Episcopalian, and the Congregationalist, all hold to certain articles of religious belief different and and some instances hostile to those entertained by the other, which they consider essential, and the reception of which by an individual would be a condition precedent to his being competent to receive from either of them the designation of pious. And so if the outward walk and conduct of an individual are to be the criterion, there will be the same diversity of opinion and judgment. The difficulty will not be obviated by declaring that the belief of those doctrines usually denominated orthodox is requisite to comply with this description; for persons whose views were directly opposite to those termed orthodox, have frequently led the most beautiful outward lives, and in their daily conduct and intercourse with their fellow men, constantly exhibited a spirit of devotion towards God and of charity towards mankind. Who is to say how the standard will vary, or that it will not vary in the future? Is the question of piety to be determined for all time to come, as far as this fund is concerned, by the standard of the

present, and are all who do not correspond with that standard to be forever excluded from its benefit; or is it to be a fluctuating standard, changing with the changing generations and adapting itself to the views of each succeeding age? The will is entirely silent upon all these points. The only light which it throws upon the subject is that the recipients of the charity must be *pious*. If the synod is to decide the point, how is it to decide the question? Is the body to be convened to pass its judgment upon each separate case as it arises, or is it to frame some arbitrary, unbending rule, and require an exact correspondence with that rule in every particular, from each individual; or is it to repose that confidence in its officers, and authorize them exercise a delegated discretion of the discretion delegated to the synod? The synod itself is a body annually changing, and its opinions with respect to the term *pious*, may vary with its change of members, and thus the question would be still left in the same doubt and uncertainty. Are the courts to decide who is pious? The same uncertainty still attaches to the bequest. The theological views of the members of the court rendering the decision must necessarily be the basis of that decision. Each judge would be controlled by his own understanding of the term, and his own interpretation of the holy scriptures. The law has fixed no definition of the term *pious*, and there is with us no State religion. 2d. Equally vague and indefinite is the word "indigent." Indigence, to a great extent, depends upon the habits, position, occupation and location of the person. The constitutions of different men vary, and their absolute necessities must be unavoidably regulated by their physical constitutions. And thus indigence becomes, to a certain extent, a question of the physical constitution of the individual, and renders a knowledge of that constitution and condition necessary, before a correct decision can be made. 3d. This indefiniteness is increased by the fact that the testator has not

restricted his bounty to persons residing in any particular locality, or preparing for the ministry at any particular institution.    4th.  Not only are the beneficiaries uncertain, but the purpose of the trust is too indefinite and undefined to be capable of judicial execution.    What is the main purpose of the bequest?    To assist in sustaining the Dutch church, to aid Rutgers College, to support the indigent young men, or to create a fund which shall perpetuate the name of the testator and redound to the glory of his memory ?    The will prescribes that the testator's name shall be given to the fund, and that it shall be preserved intact, and if possible augmented, thus furnishing an argument for the position that the testator's object was to erect a monument for himself.    It provides that no part of the income shall be paid to any recipient till he shall have entered upon the regular course of studies at Rutgers College, thus giving some ground for the opinion that his intention was to supply students and funds for a favorite institution for all time, especially as nothing beyond a certain sum named in the will is to be applied to any one individual, and the advancement of any sum whatever to any person, is dependent upon his being a student at that institution.    It limits the appropriation to those who are preparing for the gospel ministry in the Dutch church, thus furnishing countenance for the opinion that the object of the testator was the benefit of the church. It directs the income of the fund to be distributed among certain persons, thus affording a basis for the conclusion that the design of the testator was to supply the means for their support and assistance.    But who is to say which was *the purpose* of the will, and of the testator, and which is to be executed, regardless of the others; which is, in any event, to take precedence, and which to yield ?    How is the court to decide what are proper expenditures in connection with the trust, and what are improper; whether the trustee is administering it in such a manner as the

testator intended; whether the main purpose of the testator is being carried out, or is being made subservient to some other, which was not the main purpose; whether this or that act of the trustee is effectuating the real intent of the testator, or is rendering that merely secondary? 5th. This indefiniteness is fatal to the validity of the bequest. It cannot be carried into execution. As a matter of fact it would be impossible to do so; and as a matter of law the courts have decided that indefiniteness vitiates a trust. (*Story's Eq. Juris.* § 179, *a*. 1 *Jarman on Wills*, *par.* 323. *Owens* v. *Miss. So. M. E. Church*, 14 *N. Y.* 380. *Bascom* v. *Albertson*, 34 *id*. 584, 592. *Phelps* v. *Pond*, 23 *id*. 77. *Levy* v. *Levy*, 33 *id*. 101. *Trustees of Bapt. Association* v. *Hart*, 4 *Wheat*. 1. *Goddard* v. *Pomeroy*, 36 *Barb.* 546, 554.)

VI. This bequest cannot be upheld by invoking the aid of the ·law of " charitable uses." That system of jurisprudence has no existence in this·State. The indefiniteness of the beneficiaries cannot be made certain by employing that method to ascertain or select them. Neither can the want of a competent trustee be thus obviated. " Charitable trusts," like all others, must stand or fall by their compliance with the rules of the common law. This question is now settled beyond controversy. (*Bascom* v. *Albertson*, 34 *N. Y.* 584. *Levy* v. *Levy*, 33 *id.* 97. *Owens* v. *Miss. So. M. E. Church*, 14 *id.* 398, 399, 403. *Phelps* v. *Pond*, 23. *id.* 69. *Sherwood* v. *Am. Bible Society*, 1 *Keyes*, 561. *Yates* v. *Yates*, 9 *Barb.* 346.)

VII. The legislature having repealed the statutes of Elizabeth, and the Court of Appeals having decided that the law of charitable uses is not in force in this State, the bequest to the synod is void for the want of a *cestui que trust* in whom the equitable title can vest. It is a principle too elementary to require the citation of authorities, that it is necessary to the validity of a trust, that there should be designated, or in existence, some determinate

body or person that can come into court to claim the execution of the trust. This is admitted, even in the Williams case. Judge Denio expressly conceded, in his opinion, that the second trust created in that will must fail for this very reason, unless it could be upheld by virtue of the application of the doctrine of charitable uses. There are here no persons who can claim the execution of the trust. (See point V.)

VIII. The bequest is void because the absolute ownership of the fund is illegally suspended. 1. The Revised Statutes prescribe that the absolute ownership of personal estate shall not be suspended beyond two lives in being at the death of the testator. In the present case it is suspended forever. The trustee cannot dispose of the property, because it holds it in trust, and not absolutely, and for a class of persons, some of whom are not yet in existence; there is no *cestui que trust* who can unite with the trustee and thus dispose of the estate, because the *cestuis que trust* are not definitely pointed out, and there never can be, by any possibility, *cestuis que trust* in existence who, in conjunction with the trustee, can alienate the property and confer a perfect title. The absolute ownership of property is suspended, when a perfect alienation cannot be made. And in this case there never can be any alienation of the property. The directions of the testator are explicit, that "only the income arising from the fund, is to be applied to the purpose mentioned" in his will, and that the fund shall be kept invested; thus expressly, and in terms, providing that the property itself shall never be disposed of, but shall be kept intact and remain forever inalienable. The trustee is directed how to use the income, but the direction for the use of the property extends only to the income; the principal is to remain untouched; there is no possible contingency under which the trustee can exercise any control over the principal,

other than to invest and keep it invested. The quality of life does not enter into the limitation in any manner. The testator has fixed his own period (regardless of the statute) during which the absolute ownership is to be suspended, and that period is for all time to come. This is in direct violation of the statute. 2. Gifts to charity, and charitable uses, are within the scope and meaning as well as the terms of the Revised Statutes. The language is general and comprehensive, and embraces any and every limitation which suspends the absolute ownership and power of alienation beyond the allowed period. (2 *R. S.* § 1, *title " of accumulations of personal property."* *Levy* v. *Levy*, 33 *N. Y.* 124–134. *Bascom* v. *Albertson*, 34 *id.* 621. *Rose Will Case, in Court of Appeals, September,* 1864. *King* v. *Rundle*, 15 *Barb.* 139, 145–148. *Yates* v. *Yates*, 9 *id.* 324, 344, 347.) 3. The fact that the general synod is a corporation, cannot relieve the bequest in this instance from the operation of the statute. A corporation is authorized to hold property in perpetuity only when the property is held for the purposes of its incorporation. Here the real beneficiary is not the corporation, nor any of the purposes of the corporation, but persons unknown and not a corporate body of any kind. The corporation is merely the agent of the testator to distribute his bounty to individuals, and is to derive no benefit from the fund. The general act providing for the incorporation of benevolent societies and enabling them to hold in perpetuity, limits that holding to the purposes of their incorporation, and prohibits them from holding for any other, thus clearly showing that it was the intention of the legislature to exclude corporations from holding in perpetuity, except to carry out the very object for which the legislature incorporated them, and that they are not endowed with the prerogative of taking and holding property in perpetuity, to be dispensed for purposes foreign to their existence. The bequest in this case is in every respect distinct

Rainey *v.* Laing.

from that of one to a scientific or literary institution. There, if the bequest is simply to the institution, without any direction as to the disposition to be made of the gift, there can be no question that it is for the purposes of the corporation; if the bequest is accompanied with directions as to the manner of its application, to found a scholarship, to support a corps of teachers, to erect an edifice, or to supply medical and surgical aid, each of these would be within the respective purposes of the different institutions, necessary for their existence ; and there could be no question that the statute would not apply. In each instance the bequest would be brought within the act of incorporation furnishing an express legislative exception to the statute. It would be to carry out the purposes of the institution, to assist in performing acts without which it could not exist, and not merely to make use of it as a convenient distributing center for supplying the necessities of those whom the testator is desirous of relieving. The immunity which a corporation enjoys from the application of the statute prohibiting perpetuities is confined to those cases in which it holds not only the legal but the equitable title, where it has not only the legal but the beneficial interest. Here the corporation takes no equitable interest in the property, is to receive, manage and invest the principal and dispense the revenue to persons who are not members of the corporation, not connected with it, and who are selected as the beneficiaries, not by the corporation, not because it was incorporated for furnishing assistance to such persons, not because they were in existence when it was incorporated and it was desired to extend aid to them, not because it is necessary for the purposes of the corporation that they should be assisted, but simply because a testator has desired thus to dispose of his property, and has chosen to make the corporation the agent to carry out his wishes. The most elastic tension of the privileges conferred upon corpora-

tions with respect to holding in perpetuity, cannot extend those privileges to the present case. The decisions of the courts show plainly that it is excluded. (*Williams* v. *Williams*, 4 *Seld.* 525. *Levy* v. *Levy*, 33 *N. Y.* 116, 123. *Bascom* v. *Albertson*, 34 *id.* 584. *Yates* v. *Yates*, 9 *Barb.* 324, 342, 343. *King* v. *Rundle*, 15 *id.* 139, &c.)

IX. This bequest is to the general synod simply in the character of a trustee; it has no beneficial interest in the bequest; it cannot therefore take or hold the property bequeathed to it by the testator. It is a well settled principle of law that corporations cannot act as trustees in relation to any matters in which they have no interest. (*Matter of Howe*, 1 *Paige*, 214. *Levy* v. *Levy*, 33 *N. Y.* 97. *King* v. *Rundle*, 15 *Barb.* 139, 146–149. *See also* authorities cited under point 2.) So strictly has this doctrine, that corporations cannot exceed their powers, been enforced, that it has been held that a corporation cannot be seised of land for purposes foreign to its institution, and that it must exercise a power in the very manner in which it is directed to do so, or the act is void. (*Jackson* v. *Hartwell*, 8 *John.* 422. *Farmers' Loan and Trust Co.* v. *Carroll*, 5 *Barb.* 613, 649. *McSpedon* v. *Mayor of N. Y.*, 7 *Bosw.* 601.)

From this there results the following conclusions, each of which is fatal to this bequest : 1st. The bequest violates the statute which prohibits the suspension of the absolute ownership of personal property for more than two lives, as it is not such a bequest as the corporation is authorized to take and hold in perpetuity. 2d. The synod not having the power to take and hold this property as a trustee, there is no person in whom the bequest can vest at the time of the death of the testator. The beneficiaries are unknown and unascertained at the time of his death. It is uncertain whether there were then any such in existence, and the vesting of the interest in the beneficiaries would therefore be contingent. In the language of Judge Porter,

in *Bascom* v. *Albertson*, " the ownership of the fund is left swinging in abeyance." The bequest is therefore invalid as contravening the law against perpetuities, even if that law be considered to extend no further in respect to gifts to charities, than to cases where the bequest is contingent. (*Phelps* v. *Pond*, 23 *N. Y.* 77. *Rose* v. *Rose*, *in Court of Appeals*, 1864.) 3d. If the decisons of the Court of Appeals in *Phelps* v. *Pond*, *Beekman* v. *Bonsor*, *Owens* v. *Missionary Society of M. E. Church*, and *Sherwood* v. *The American Bible Society* be correct, that a competent trustee must be appointed to receive the title and execute the trust, the bequest in this case cannot be sustained.

X. The testator not having appointed a trustee competent to take the fund and execute the trust, the bequest is as illegal and invalid as if it had been made directly to the unascertained and unascertainable persons whom it was his design to benefit, or to an unincorporated society or association. In either case it would be void, and the property would go to the next of kin. Where there is no trustee competent to take at the creation of the trust, the court of chancery has no jurisdiction to uphold a bequest even for charitable or religious purposes. (*Owens* v. *Miss. Society of M. E. Church*, 14 *N. Y.* 380. *Beekman* v. *Bonsor*, 23 *id.* 298.)

XI. There is here a virtual direction for an illegal accumulation of the interest and income of personal property. The testator has specified that " any sum not exceeding $500 may be applied annually, from said income, to or towards the support and education of each one of such young men to whose support and education any part of said income may be applied." He has thus fixed a limit beyond which the trustee cannot go; but he has not directed that the whole income shall be expended in each year; neither has he fixed any amount below which the trustee shall not reduce the appropriation to each person. There may be no indigent pious young men studying for

the ministry in the Dutch church at Rutgers College in some particular year, or there may not be a sufficient number to absorb the whole income, under the scale indicated by the testator; or there may be no persons, for some time to come, who will correspond to all the requirements of the synod as to piety. There are thus here three probable contingencies in which the income must accumulate, and there is no direction to the trustees to expend the whole income every year. In addition, the testator provides for a further accumulation and addition to the fund, by requesting that any person who shall have received any thing from the fund, and shall thereafter be able to refund the moneys which he has received, or any part thereof, will pay the same to the synod, and directing the sum so paid to be added to the principal. By these different means the principal in time might be increased to a great extent; and it is evident that the testator had in view the increase and accumulation of the Laing fund, if possible. This direction for an accumulation, and the implied direction for an accumulation in the different cases mentioned heretofore under this head, are void, as being in contravention of the statutes of this State in respect to accumulations. No accumulations are valid except in behalf of minors. The accumulations which have been enumerated as probable, and almost certain to occur from the income of the fund, irrespective of any money that may be repaid by those who have received aid therefrom, are a part of the trust, cannot be separated from it without changing the whole character of the trust, and framing a new will for the testator, and they necessarily vitiate the whole trust. The testator's idea was to create a fund that should be perpetually growing, and should be a monument of his munificence, continually increasing in amount; and this is not permitted by the law of this State.

XII. The direction in the third clause of the will, to pay the residue of the income of $20,000 to the general

synod of the Reformed Protestant Dutch Church, and after the death of Catherine E. Heermance and William L. Laing, to pay the principal sum of said $20,000 to said synod, is illegal and void, for the reasons already stated in the previous points. It is liable to all the objections contained in those points with respect to the direct bequest to the synod.

XIII. The decision of the court below in admitting the testimony as to the amount of the property held by the general synod, and in overruling the various objections to the introduction of the same by the counsel for the synod, was correct. The evidence was pertinent, material to the case and decisive of the issue, (see point I;) and it would have been a manifest error to have excluded it.

XIV. The decision of the court below, excluding the evidence offered by the counsel for the synod, to prove that at all times there were more applicants for the use of the funds in the hands of the synod than there is money to maintain them; or, in other words, that the income of the fund for the study of the ministry is not sufficient to support the applicants who desire to enter upon their studies, was correct. The testimony was entirely foreign to the issue. It could throw no light upon the legality of the bequest; that is a question of law, not of fact. Whether the applicants for the use of funds now held by the synod or any other body, or person, have been many or few, cannot aid the court in determining whether the provisions of the will of James B. Laing are legal or illegal; whether the synod is authorized to act in the naked capacity of a trustee where it has no beneficiary interest; whether any definite *cestui que trust* has been named by the testator, or whether the execution of the trust would involve the violation of any statute of the State.

XV. Each and all of the exceptions filed by the general synod to the findings of the court below, are untenable.

Rainey *v.* Laing.

XVI. The refusal of the court below to find the requests of the counsel for the general synod was correct.

XVII. If the court below has omitted to find any question of fact involved, the remedy is not an exception, but a motion to have the finding corrected; the omission (even if there be one) cannot be considered on an appeal from the judgment. (*Sharp* v. *Wright,* 35 *Barb.* 236. *Niles* v. *Price,* 23 *How. Pr.* 473. *Manley* v. *Ins. Co. of North America,* 1 *Lansing,* 20.)

XVIII. The testator has endeavored to divert his property from its natural channel, has placed those joined to him by the ties of relationship upon the same level, in the amount bestowed upon them, with the nameless indigent young men referred to in his will. The court should not permit this purpose to be accomplished, and this property to pass into the hands and under the control of an overgrown corporation, unless some imperative rule of law so requires. There is no such rule, and the judgment of the court below, declaring the controverted provisions of the will invalid, and directing the property to be distributed among the next of kin of the deceased, should be affirmed, with costs of the appeal to be paid by the appellant.

*By the Court,* CARDOZO, J. It is a mistake to suppose that the law of trusts has any application to this case. There is but one trust created by the will, viz., the one mentioned in the third clause, and upon that no question arises here, and its only relevancy is so far as it tends to confirm the view that the fifth clause does not and was not intended to create any trust.

The third clause shows that the testator was well advised as to the proper language to be employed when the bequest was to be held in trust; and that he did not use similar phraseology in the fifth clause, goes only to show that the devise therein mentioned was not intended by him to be construed otherwise than by its terms he has

expressed it. By that clause (5th) the testator gave the property to the general synod of the Reformed Dutch Church, "to be applied to the support and education of pious and indigent young men preparing for the gospel ministry in that church;" a purpose which was, in the highest and holiest sense, both "religious and charitable." The devise is absolute in its terms; no condition whatever is imposed. That the testator declares that he gives the property to the synod for one of the only purposes to which by law it could appropriate its property, certainly should not defeat his pious and charitable design. The statute incorporating the synod expressly provides that its property shall not be appropriated to any other than religious and charitable purposes; and all that the testator has done is to say the same thing. As the fee vests absolutely in the synod, there can be no doubt of the validity of this provision of the will.

The question whether the property, with that which the synod now holds, would exceed in amount the sum to which its charter restricts it, cannot be tried in this action. That question is not to be determined collaterally, but only in a direct proceeding by the State. The condition imposed in the act of incorporation is not against *taking,* but against taking *and* holding. (*See Runyan* v. *Coster,* 14 *Peters,* 128, *and cases there reviewed.*) The corporation, therefore, can take. Whether it can hold, is another question, not necessary nor proper in this collateral way to be considered; which is purely one of public policy, with which individuals have no concern, but in which the State, as the sovereign, is alone interested, and which it may either raise or waive, according to its pleasure. (*Humbert* v. *Trinity Church,* 24 *Wend.* 630. *Bogardus* v. *Trinity Church,* 4 *Sandf. Ch.* 758. *In re Ref. Pres. Church,* 7 *How. Pr.* 476. *Trustees of Vernon* v. *Hills,* 6 *Cowen,* 23. *All Saints Church* v. *Lovett,* 1 *Hall,* 191. *Angell & Ames on Corp.* 746, 747, *and cases there cited.*)

The judgment of the special term should be reversed, and judgment ordered in accordance with this opinion. (*Edmonston* v. *McLoud, &c.*, 16 *N. Y.* 543.)

Judgment reversed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham*, P. J., and *Cardozo*, Justice.]